[No. 12549. In Bank.—June 29, 1888.]

## DANIEL CLEVELAND, RESPONDENT, v. DANIEL CHOATE ET AL., APPELLANTS.

DEED — DESCRIPTION — PAROL EVIDENCE. — When a deed of a city lot refers to an official map of the city, and also to stakes at the corners of the lot, parol testimony is admissible to show that the official map is inaccurate, and was compiled from other maps without actual survey; that the stakes referred to were set by another surveyor, who located the lot when it was granted by the city trustees as the basis of their grant; and that the tract which the city intended to sell and the grantee intended to buy was then staked off and definitely located by such surveyor.

ID. — CONFLICT BETWEEN MAP AND SURVEY. — A map referred to in a deed is to be taken as part of it only when it can be used in aid of the description. Where there is a conflict between the map and the survey, the survey controls; and the reference to the map may be treated as surplusage.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

In 1856, Charles H. Poole prepared a map of the pueblo lands of the city of San Diego, lying between what is known as New San Diego in said city and the Mission Valley, comprising a strip of several miles, running from the bay of San Diego back to the eastern limits of the city. This map was for some years thereafter, until 1868, the official map of these pueblo lots, and was supposed to be correct until the surveys made by James Pascoe, county surveyor, December 6, 1867, June 12, 1868, and July 1, 1868, which demonstrated its incorrectness, and resulted in the making and adoption of the Pascoe map as the official map, in August, 1870. M. G. Wheeler was the deputy surveyor of James Pascoe, and surveyed the lots in controversy February 6, 1869, as the basis of deeds thereof from the city trustees. The defendants claimed lot 1132 under the grant thereof by the city trustees to Oliver P. Searles and Francisco Estudillo, who conveyed the same to A. E. Horton, who conveyed to the defendants. They also claimed the east half of lot 1123, under a deed from Horton, who claimed under a conveyance from Cassiday, one of the original grantees of lot 1123, and who was a co-grantee with the plaintiff. The deed from Cassiday to Horton referred to the Poole map, but that from Horton to the defendants referred to the Pascoe map.

The suit was brought to quiet title to the west half of lot 1123. The defendant claimed that a proper survey, according to the description of the Poole map, had been made by Charles J. Fox, supported by T. S. Sedgwick, which showed that lot 1123, by the Pascoe map, is all located within the boundaries of lot 1132 by the Poole map, and therefore belongs wholly to the defendants.

The further facts are stated in the opinion of the court.

*Levi Chase,* and *M. A. Luce,* for Appellants.

The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity. (*Hawley* v. *Brumagim,* 33 Cal. 394; Civ. Code, sec. 1638; *Norton* v. *Woodruff,* 2 N. Y. 153; *Buck* v. *Burk,* 18 N. Y. 339; *Dent* v. *N. A. Steamship Co.,* 49 N. Y. 390; *Watros* v. *McKie,* 54 Tex. 65; *Walker* v. *Tucker,* 70 Ill. 527; *Robb* v. *Bancroft,* 13 Kan. 123; *Jeffrey* v. *Grant,* 37 Me. 236; see also *Norwood* v. *Byrd,* 1 Rich. 135; 42 Am. Dec. 406, and note thereto.) Section 1640 of the Civil Code applies only where suit is brought to reform the instrument on account of fraud, mistake, or accident. Contracts are to be interpreted and enforced according to the fair import of their terms, without reference to the hardships that may fall on the parties. (*Abbott* v. *Gatch,* 13 Md. 314; 71 Am. Dec. 635; *Dent* v. *Bird,* 67 Cal. 652.)

*Chapman & Hendricks,* and *Wellborn & Works,* for Respondent.

The court will receive evidence as to the position and conduct of the parties so as to give effect to their intentions. (Code Civ. Proc., sec. 1859, 1860; *Kimball* v. *Semple,* 25 Cal. 449; *McNeil* v. *Shirley,* 33 Cal. 202; 3 Washburn on Real Property, 333; *Piper* v. *True,* 36 Cal. 614, 615.) The object of all interpretation is to arrive at the intention of the parties. (Code Civ. Proc., sec. 1859, 1862; Civ. Code, sec. 1636, 1640, 1651; *Serrano* v. *Rawson,* 47 Cal. 52; *White* v. *Luning,* 93 U. S. 514; *Ferris* v. *Coover,* 10 Cal. 589, 629; *Kimball* v. *Semple,* 25 Cal. 442, 449; *Walsh* v. *Hill,* 38 Cal. 481, 486, 487; *Pico* v. *Coleman,* 47 Cal. 65–67.) When there is a conflict between the map and survey, the survey controls. (*O'Farrel* v. *Harney,* 51 Cal. 125–127; Martindale on Conveyancing, 82, note 3.)

The COURT.—This is an action to quiet title to certain property situate in the city of San Diego. The principal question involved relates to the admissibility of parol testimony. There was evidence to show that the Poole map was inaccurate; that it had no scale or starting-point, and that a surveyor could not, by using the map, locate any of the pueblo lots. The map cannot be made to represent the territory which it purports to include. It was intended to cover all pueblo lands. Afterward one Pascoe made a survey which demonstrated that there was a strip of land half a mile wide between New San Diego and Mission Valley, which was not shown on the Poole map. Poole's map did not show his starting-point, and the witnesses at the trial could not agree as to what was the proper starting-point. Poole's map was not made from an actual survey, but was compiled from other maps. The land is described in the deed as follows: "Being that lot of land and west half of lot 1123, bounded as follows: Commencing at a stake, being the southwest corner of said lot No. 1123, running thence north forty chains to a stake, thence east twenty chains to a stake, thence south forty chains to a stake, thence west twenty chains to the place of beginning, containing eighty acres of land, according to the official map of said city, made by Charles H. Poole, A. D. 1856."

The evidence shows that the city required the purchasers to survey the land before deeds were made. The lands in controversy were surveyed, and trees planted thereon by the grantees. The surveys were returned to the city trustees before any deeds were executed. These surveys were before the board of trustees when the deeds were made. One of the trustees, who signed all the deeds in controversy, went upon the lands before the deeds were executed and procured lot 1132 to be surveyed, took possession of the same, and planted trees thereon. The applications of Cleveland and Cassi-

day for lot 1123, and of Searles and Estudillo for lot 1132, were granted by the same resolution. The same surveyor acted for all parties, and the surveys were made at the same time, and all included in one set of field-notes. The surveyor, Wheeler, filed his field-notes and diagram for the city trustees, and upon these the city trustees acted in making the deeds. The parties respectively took possession of their lands as surveyed, and planted trees upon the same. The stake named in the description in the deed as the beginning-point of the survey was fully identified by the surveyor who made the survey. In July, 1868, a public park was laid out and marked with stakes. The tract thus laid out as a park has been maintained as such to this time, and has been well known and designated upon all the maps as the city park. At the time Wheeler made his survey there was a stake at the northwest corner of the park, marked northwest corner of pueblo lot 1131, the northeast corner of lot 1132, and the southeast corner of lot 1123, and southwest corner of lot 1134. Lot 1123 was located so that the southeast corner thereof was identical with the northwest corner of the park. The surveyor located lot 1132 at the same time he located lot 1123, and he made the northeast corner of 1132 identical with the northwest corner of the park. According to the Poole map, lot 1132 lies directly west of lot 1131, the west line of 1131 corresponding with the east line of 1132. According to the same map, lot 1123 lies immediately adjoining 1132 on the north, the southern line of 1123 being the northern boundary line of 1132. The northwest corner of lot 1131, therefore, is identical with the southeast corner of lot 1123 according to the Poole map.

In view of the fact that the Poole map is inaccurate, that it is not a map made from an actual survey, that the country which it purports to map was really one half mile longer from north to south than the surveyor

believed it to be, and the fact that the map represents no starting-point and no place of commencement for an actual survey,— being simply a compilation,— we think the court did not err in admitting parol testimony to prove the location of the tract of land which the city intended to sell, and which Cleveland intended to buy, and to prove that that tract of land had been staked off and definitely located. (*Widbur* v. *Washburn,* 47 Cal. 67.) There is in the deed a description by reference to a stake set in a certain place, and the location of that stake is made certain by the person who placed it and made the survey. By commencing at this stake, named as the starting-point of the survey, and by following the courses and distances named in the deed, the lot is located with certainty. The reference to the Poole map, we think, may be treated as surplusage. It is only where a map can be used in aid of a description that it is taken as a part of the deed, and where there is a conflict between the map and the survey, the survey controls. (*O'Farrel* v. *Harney,* 51 Cal. 125.) Of course the reference in the deed to a stake as the beginning-point of the survey cannot be taken to mean a stake set by Poole, and according to the official map made by Poole, because Poole made no survey and set no stakes. The stakes were set by Wheeler at the time he made the survey, which was returned to the board of trustees.

In the deed from Horton to Choate and others, under which they claim in this action, the property is described as lot 1123, according to the official map made by Pascoe in May, 1870, and excepts from its operation a portion of the same lot previously conveyed, and described according to the Poole map. There was, therefore, some evidence showing that lot 1123, by the Poole map, had been regarded by the parties as the identical lot described in the Pascoe map as lot 1123.

Judgment and order affirmed.