S. F. FENTON, DOING BUSINESS UNDER THE NAME OF THE INTER-MOUNTAIN ELECTRIC COMPANY, PLAINTIFF AND APPLICANT, *v.* JACOB B. BLAIR, A. S. GEDDES, CHARLES H. ROBERTS AND M. CHRISTOPHERSEN, AS MEMBERS OF THE COUNTY COURT OF SALT LAKE COUNTY, DEFENDANTS.

1. COUNTY COURT.—COUNTY INDEBTEDNESS.—LIMIT OF INDEBTEDNESS.— POWER CONFERRED BY STATUTE BY IMPLICATION.— 1 Comp. Laws 1888, p. 298, § 187, empowers the county court to lay out and maintain public roads; to erect, re-build and furnish public buildings; to settle and allow all accounts legally chargeable against the county, and to perform various other acts from which indebtedness must arise. Id. p. 293, § 173, provides, that " no county shall incur any indebtedness or liability in any manner, or for any purpose to an amount exceeding in any year the total amount of its income and revenue for the two fiscal years immediately preceding the incurring of such indebtedness." Id. p. 306, § 195, provides " the court must not for any purpose contract debts or liabilities except in pursuance of law, nor shall such indebtedness or liability in any manner or for any purpose exceed in any fiscal year the income and revenue of such county for the

two fiscal years immediately preceding the incurring of such indebtedness." Id. p. 308, § 200, provides " warrants drawn by the order of the court on the county treasury must specify the liabilities for which they are drawn and the funds from which they are to be paid." Nowhere does the provisions of the statute relating to county courts in express terms confer power upon the county court to create any indebtedness. *Held: First*, that the statutes by implication conferred on the county court the power to create indebtedness against the county; *second*, that the amount of indebtedness which the county court may in any way create can not at any time exceed the revenues of the current fiscal year in excess of the revenue and income for the two years immediately preceding; *third*, that it is immaterial when the indebtedness accrues, when the limit is reached the power of the county to contract further indebtedness ceases.

2. ID.—ID.—ID.—CURRENT TAXES.—Since the taxes for the current year are in contemplation of law, collected as soon as the levy is made, the allowance of claims against the county equal to the tax revenue for the current year is not a creation of indebtedness or liability against the county.

3. ID.—ID.—ID.—COUNTY WARRANTS.—Where the limit of indebtedness allowed by law to be created by the county court has been reached, such county may issue warrants for future claims as they arise, as soon as an equal amount of the legally issued outstanding warrants have been redeemed.

(No. 572.  Decided Feb. 23, 1895.  39 P. R. 485.)

Original application on relation of S. F. Fenton, doing business under the name of the Inter-Mountain Electric Company against Jacob B. Blair, A. S. Geddes, Charles H. Roberts and M. Christophersen, as members of the county court of Salt Lake county for a writ of *mandamus*. *Writ denied.*

*Messrs, Allen & Pence* and *Mr. W. H. Dickson,* for applicant.

*Mr. C. O. Whittemore,* County Attorney, for defendants.

SMITH, J.:

This is a proceeding begun originally in this court to obtain a writ of mandate against the defendants, requiring them, as the county court of Salt Lake county, to issue to the plaintiff a county warrant for the sum of $464.56, alleged to be due the plaintiff for certain labor done and material furnished to the county of Salt Lake on and after the 15th day of November, 1894, and prior to the 17th day of December, 1894. It is alleged, in substance, that the plaintiff made a contract with the defendants' predecessors in office, then constituting the county court of Salt Lake county, to furnish and deliver certain electrical appliances and do certain labor for the sum of $464.58; that he performed this labor prior to the 17th day of December, 1894, and on the 19th day of January, 1895, the defendants in the meantime having qualified, the plaintiff having presented his account, duly verified, as required by law, and prayed the allowance of the same, it was rejected by the county court. The defendants admit that the contract was made as alleged, and that the plaintiff performed the labor and furnished the material for which his claim was presented; admit that the county had not paid the claim, or any part of it, and that on the 19th day of January, 1895, the plaintiff made demand of the defendants that they allow and pay the said amount, and that they refused to allow or appropriate for or pay the claim. It is then set out that the reason why such allowance, appropriation, or payment is not made is that, at the time the contract was made, there were warrants outstanding and unpaid drawn on the treasury of Salt Lake county under the direction of the county court, amounting in the aggregate to the sum of $353,674.11, and, in addition thereto, other liabilities incurred by said county court, amounting to $125,000; that the funds in the treas-

ury of the county available for the payments of warrants on the date when the contract was made amounted to the sum of $24,109.45; that the excess of warrants over the funds in the treasury to meet the same was $329,564.66; that this amount of indebtedness, with that which had been incurred as aforesaid, for which warrants had not been drawn, made the total indebtedness against the county $454.564.66. The defendants further allege that the plaintiff presented his claim on the 31st day of December, 1894, and that the amount of warrants outstanding and unpaid at that time was $427,550.88, and that there were funds in the treasury available for paying such warrants to the amount of $22,715.48. Defendants further allege that the total revenue and income of Salt Lake county for the years 1892 and 1893 amounted to $326,748.06.

A stipulation of facts was agreed upon by counsel for the respective parties, which shows the following facts, which we deem material: On the 31st day of December, 1894, the total outstanding warrants of Salt Lake county unpaid were $427,550.88. The amount of moneys on hand was $22,715.48. The amount of taxes uncollected, but which were admitted to be collectible for the year 1894, was $18,167.39. The income and revenue for the county for the years 1892 and 1893, excluding poll tax paid in labor, and excluding the county school taxes, amounted to $326,748.06; but, of this amount, $49,770.99 was for tax levied in 1891, and collected in 1892. That poll tax paid in labor to the county during 1892 and 1893 was $11,-234.50. That the county school tax for 1892 and 1893 amounted to $185,712.68. That 4 per cent. of the entire taxable property of the county of Salt Lake in the year 1893 was $1,938,674.16. That the total county tax assessed for 1894, excluding poll tax paid in labor, and excluding school tax, was $122,727.74; and the revenue from other

6

sources was $43,355.06.   That there was cash in the hands
of the treasurer January 1, 1894, $7,602.16.

The case presents two questions: *First.* Whether or
not the county court of Salt Lake county has any power,
under existing congressional and territorial laws, to create
indebtedness against said county.   *Second.*  If such power
exists, what is the limit of indebtedness, or what is the
amount of indebtedness that can be so created?

An examination of the congressional and territorial laws
nowhere discloses any express authority to incur indebted-
ness.    The duties and powers of the county court are set
out at large in section 187, p. 298, of the first volume of
the Compiled Laws.   The county court possesses the power
to supervise the conduct of officers;  to divide the county
into school, road, and other districts;  to establish, abolish,
and change election precincts;  to lay out, maintain, con-
trol, and manage public roads, turnpikes, ferries, and
bridges;  to provide for the care and maintenance of the
indigent sick or otherwise dependent poor;  to provide a
working farm and work-shops in connection with the
county hospital or poorhouse;  to employ the inmates thereof;
to provide suitable rooms for county officers;  to purchase,
lease, or hold real or personal property necessary for the
use of the county;  to cause to be erected or rebuilt and
furnished the courthouse, jail, hospital, and such other
public buildings as may be necessary;  to sell property be-
longing to the county;  to examine and audit the accounts
of public officers;  to settle and allow all accounts legally
chargeable against the county and order warrants to be
drawn on the treasury thereof;  to levy taxes on taxable
property of the county;  to maintain, regulate, and govern
public pounds and pound keepers;  to equalize assessments
within their county;  to control and direct the prosecution
and defense of all suits to which the county is a party;

to insure the county buildings in the name and for the benefit of the county; to fix the price of advertising; to adopt a seal for their court, and enforce rules for the government of their body; to make annual reports of the financial condition of the county; to provide for the destruction of wild animals, noxious weeds, and insects; to establish county office for the transaction of the business of the county; to fill vacancies by appointment; to provide for the preservation of the public health; to prevent the bringing of indigent persons into the county; to provide for working prisoners under sentence in the county jail; to provide for burying the indigent dead; and to make the necessary local police and sundry other regulations not in conflict with the general laws.

Section 173, p. 293, provides that "no county shall incur any indebtedness or liability in any manner, or for any purpose, to an amount exceeding in any year the total amount of its income and revenue for the two fiscal years immediately preceding the incurring of such indebtedness. Any indebtedness or liability incurred contrary to this provision shall be void." Section 174, p. 294, provides: "All contracts, authorizations, allowances, payments, and liabilities to pay, made or attempted to be made, in violation of this act, shall be absolutely void, and shall never be the foundation of a claim against such county." Section 195, p. 306, provides: "The court must not, for any purpose, contract debts or liabilities, except in pursuance of law, nor shall such indebtedness or liability, in any manner or for any purpose, exceed in any fiscal year the income and revenue of such county for the two fiscal years immediately preceding the incurring of such indebtedness." Section 200, p. 308, provides: "Warrants drawn by order of the court on the county treasury must specify the liabilities for which they are drawn, and the funds from which they are to be paid. The treasurer must pay

the warrants in the order of their presentation. If the fund is insufficient to pay any warrant, it must be registered, and thereafter paid in the order of its registration." These are substantially all of the statutes bearing upon the subject of the power of the county court to create an indebtedness; and while they nowhere, in express terms, authorize the county court to incur such indebtedness, they nowhere expressly forbid it; and it would seem from the nature of the duties imposed upon the county court, the limit of their power to levy taxes, and the language of the sections we have cited above, that the power to create an indebtedness within certain limits is unquestionably implied and intended by the legislature. We think there is authority under these statutes to create an indebtedness.

So the next question, and the more difficult one, is, what is the limit of the indebtedness? Section 182, p. 296, 1 Comp. Laws, in the fifth subdivision, provides, among other duties of the county clerk, "that the county clerk must keep an accurate account of all receipts and expenditures of his county, also of all debts payable to and by said county; at the first session of the court held in each year the clerk shall submit to the said court a statement showing the total amount received from each source of revenue during the fiscal year ending on the thirty-first day of December last preceding, the balance, if any, in the treasury at the close of the previous fiscal year; the expenditures during the fiscal year just closed, specifying separately the total amount paid to each officer and the total amount for each and every disbursement, the balance on hand, if any, together with a statement of all the debts payable to and by the said county." The contention of the plaintiff is, in brief, that the county court in each year may expend its revenue collected in that year, and may incur an indebtedness in excess of the revenue equal

to the revenue for two years immediately preceding, and that this process may be repeated from year to year until the entire indebtedness should equal the 4 per cent. limit fixed by the act of congress. It is intimated in the brief of counsel for the plaintiff that the legislative powers of the territory could not be exercised to limit the power of the county court within the 4 per cent. fixed by the act of congress; that otherwise their actions would be in conflict with that act of congress. We think this does not necessarily follow. The act of congress is simply a limitation upon the legislature of the territory, is not a grant of power to the legislature, much less to the county court. It forbids the legislature to authorize a greater indebtedness than 4 per cent., and, being directly applicable to the territory, of course forbids the municipal corporations in the territory from incurring for any purpose an indebtedness in excess of 4 per cent. The question is, what is the limit that the territorial legislature has fixed?

An examination of the statutes we have cited, including that in regard to the duty of the county clerk, together with the provisions requiring the county court to publish a statement of the indebtedness of the county at the end of each year, as provided in subdivision 22 of section 187, indicates pretty clearly what the intention of the legislature was as to the limit of indebtedness. The language of the first section fixing the limit is "that no indebtedness or liability shall be incurred in any manner, or for any purpose, in any amount exceeding in any year the total amount of its income and revenue for the two fiscal years immediately preceding." The other section (195) is almost in the same language. The language is: "The court must not contract any debts or liabilities except in pursuance of law, nor shall such indebtedness or liability, in any manner or for any purpose, exceed in any fiscal year the income and revenue of such county for

the two fiscal years immediately preceding." It will be observed that the provision is not that the amount of indebtedness or liabilities created in any fiscal year shall not exceed the income for the two preceding years, but that the entire liabilities and indebtedness for any purpose contracted in any manner shall not exceed that amount. Taken in connection with the provisions which require the financial condition of the county to be made up at the end of each fiscal year, the statement to be rendered at that time, our conclusion is that the intention of the legislature was to limit the power of the county court to issue warrants at any time, for any purpose, or in any manner, or to contract any debts or liability beyond the revenues of the current fiscal year in excess of the revenue and income for the two years immediately preceding.

We agree with counsel for the plaintiff that the allowance of claims against the county equal to the revenues for the current year is not a creation or incurring of any indebtedness or liability. While the taxes for the current year are not collected until the end of the year, they are undoubtedly, after they are levied, regarded as a legal certainty, and are to be treated as if already collected, and allowances may be made against such taxes to the extent of such levy. The question may be presented as to the power of the county court to make allowances prior to the time of making the tax levy for the current year even to pay the current expenses of the county. We are not called upon to decide that question in this case, although it was somewhat argued before us upon the hearing. The stipulation of fact shows that, at the time plaintiff presented his claim to the county, the total amount of outstanding warrants of the county was $427,-550.88; that the total revenue, including poll tax of the county, for the years 1892 and 1893, was $337,982.56. It is very clear to our mind that the school tax should not

be reckoned as any part of the county revenues in fixing the limit of indebtedness. Nor do we think it material that a considerable portion of the warrants outstanding on the 31st day of December, 1894, or rather of those issued during the year 1894, was for work and labor done and contracted for during the year 1893. If we are right as to the limit of indebtedness, it is wholly immaterial when the indebtedness accrued. When it reaches the limit, the power to contract further indebtedness ceases. In our opinion, all warrants drawn upon the county treasurer during the year 1894 at any time when the amount of warrants outstanding exceeded $337,982.56 were absolutely void, and that, inasmuch as that amount and a great deal more of the warrants were in existence when the plaintiff presented his claim for allowance, we have no authority to direct the county court to issue a warrant for the sum. Section 175, p. 294, of the county government act (Comp. Laws) provides expressly that members of the county court shall be liable in person for any violation of the provisions of the act in regard to allowances.

A great deal of apprehension was expressed in the argument as to the conduct of the county government for the future until the revenues for the year 1895 were available. It is not perhaps necessary to the decision of this case that we should make any suggestion in regard to these future claims. However, we are of the opinion that, as fast as the county courts redeem any outstanding warrants that have been legally issued, they may issue an equivalent amount of warrants; and, if the revenues for the years 1893 and 1894 exceed those of the years 1892 and 1893, the difference might be allowed during the year 1895; but we are clearly of the opinion that by no means of juggling with the figures and the financial statement of the county can the debt limit be increased at any time in any

year exceeding the entire revenue for the two years immediately preceding the time such debt is created.

It results from these views that the application of the plaintiff in this case must be denied, and the proceeding dismissed; and it is so ordered.

MERRITT, C. J., and BARTCH and KING, JJ., concur.