PLEASANT VALLEY COAL COMPANY, RESPONDENT, *v.* COUNTY COMMISSIONERS, SALT LAKE COUNTY.

TERRITORIAL STATUTES—CONSTITUTIONAL LAW—POWERS OF COUNTY COMMISSIONERS— COUNTY. DEBT—PUBLIC RECORDS — JUDICIAL NOTICE.

1. Under section 2, art. 24, Const , all the laws of the late territory of Utah which were not repugnant to the constitution remained in force after the admission of the territory into the Union, until they were altered or repealed by the legislature, or until they expired by their own limitation.

2. Section 3, art. 14, of the constitution, did not annul section 5, 1 Comp. Laws Utah 1888, p. 293; and the power of the county commissioners to incur indebtedness or liability to an amount equal in any one year to the total amount of a county's income and revenue for the two fiscal years immediately preceding the incurring of such indebtedness continued till June 5, 1896 (section 5, p. 517 Sess. Laws 1896), when, by statute, the legislature made operative section 3, art. 14, of the constitution, so far as it affected the authority of county commissioners to incur indebtedness.   ZANE, C. J., dissenting.

3. Under the laws in force in 1896, and the facts of this case, the limit of indebtedness for that year was $377,767.83; and, as the expenditures of the county commissioners only amounted to $356,240.36, the debt limit was not exceeded, and no warrants

15 UTAH—7

issued by them are unlawful on the ground that the debt limit had been exceeded. ZANE, C. J., dissenting.

4. In determining the question of the validity of the expenditures of public officers, the court may take judicial notice of the public records of such officers.

(Decided April 26, 1897.)

Appeal from the Third district court, Salt Lake county. Hon. A. N. Cherry, *Judge.*

Action by the Pleasant Valley Coal Company against the board of county commissioners of Salt Lake county, Utah. Judgment for plaintiff, and defendants appeal. Affirmed.

*Waldemar Van Cott, Graham F. Putnam,* and *Ray Van Cott,* for appellants.

*John M. Zane, Frank B. Stephens,* and *C. O. Whittemore,* for respondent.

No briefs were filed.

BARTCH, J.:

This is a proceeding in *mandamus* instituted in the district court by the plaintiff to compel the county commissioners to act on his claim for coal furnished the county, and order a warrant drawn therefor in his favor upon the county treasurer. It appears from the affidavit that, during the month of December, 1896, the plaintiff, at the instance and request of Salt Lake county, furnished and delivered coal for the use of the county jail; that the price agreed to be paid for the coal so delivered was $51; that no part thereof has been paid; that on January 5, 1897, the plaintiff presented and filed, as required by law, a claim therefor, with the clerk of the board of commissioners, the claim having previously been duly examined

by the auditor of the county and found to be correct; and that on the 8th day of March, 1897, upon demand made to allow the claim and order a warrant drawn, the commissioners refused, and still refuse, either to allow or reject the claim, or to take any action whatever thereon, on the ground, as appears from the answer, that at the time of the furnishing of the coal the county had already exceeded its limit of indebtedness by about $88,000. These, in substance, are the facts upon which the aid of a writ of mandate is sought, to compel action by the board of commissioners. After the answer had been filed, the court below, on motion of the plaintiff, rendered judgment on the pleadings, granting the writ, and from this judgment the defendant board appealed.

The material question to be determined is whether, at the time of the furnishing of the coal, Salt Lake county had already exceeded the limit of its indebtedness which it was allowed to create by law. The affirmative of this proposition is strongly maintained by the appellant, and the negative is maintained by the respondent with equal vigor. The main controversy has arisen over certain disputed items of revenue and expenditures for the year 1896, and these, as well as the undisputed items, will be considered in their order, together with the law applicable thereto.

The items constituting the sources of revenue for 1896, about which there appears to be no controversy,—the same being admitted to be correct by the answer,—are as follows:

| | |
|---|---:|
| Liquor licenses | $12,000 00 |
| Merchants' licenses | 1,981 25 |
| Butchers' licenses | 300 00 |
| Fees of county officers | 32,839 31 |
| Fines and forfeitures | 337 90 |
| Pauper account | 32 00 |

| | | |
|---|---|---|
| Poll tax | $60 | 00 |
| State of Utah, rent | 3,500 | 00 |
| State, on account salaries of certain officers | 2,837 | 50 |
| Tax levy for 1896 | 130,519 | 47 |
| Total amount admitted | $184,407 | 43 |

In the affidavit appears an item designated "miscellaneous," which amounts to $4,082.66, and in the answer this item is given as $2,120.66. There being nothing to show what sources of revenue are included within it, the amount in the answer must be taken to be correct, which, added to the other items above set forth, equals $186,528.09. The other disputed items of revenue for 1896 are as follows:

| | | |
|---|---|---|
| Cash on hand January 1, 1896 | $40,244 | 52 |
| Balance of taxes for 1894 | 1,170 | 78 |
| Balance of taxes for 1895 | 28,110 | 19 |
| Redemption of tax sales previous to 1896 | 11,889 | 12 |
| Total of these items | $81,414 | 61 |

It is contended by the appellant that the cash on hand and the balances of the taxes for 1894 and 1895 do not constitute sources of revenue for 1896, and that this revenue was only applicable to the payment of indebtedness existing previous to that year. This necessarily raises the question as to what laws were in force on and after January 4, 1896, the date when the territory of Utah became a state, and the constitution the organic law. That instrument, in section 2, art. 24, among other things, provides: "All laws of the territory of Utah now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are altered or repealed by the legislature." Under this provision, it is clear that all the territorial laws which were not repugnant to the constitution re-

mained in force, after the admission of the territory into the Union, until they were altered or repealed. Among those laws, there was an act entitled "An act to establish a uniform system of county government." 1 Comp. Laws Utah 1888, p. 292. That act provides a complete system for the administration of county affairs. It defined the powers of counties; provided, among other things, for the raising and disbursing of revenue; and established a limit of indebtedness. Within its provisions was contained the power to make contracts, and generally to transact the business of the county. Upon a careful examination of the provisions of the constitution, we are not convinced that it was the intention of the framers of that instrument that the laws relating to the raising of revenue and to expenditures should be abrogated immediately upon the territory becoming a state, and before the state could provide a law instead thereof. It is more reasonable to assume, in the absence of express words of abrogation, that the intention was to continue in force such laws until superseded by enactments of the state. We perceive no such repugnance between section 3, art. 14 of the constitution, and section 5 of the act of 1888, as will justify us in holding that the latter was annulled by implication immediately upon the constitution becoming the supreme law. It is clear, however, that said section 3 of the constitution was intended to put all the counties of the state on a cash basis, but there is no express provision that such a result should be accomplished on the very day when that instrument should take effect; and, if such had been the case, it would have served as an instrument to entrap innocent persons, dealing with the county, and holders of warrants, into the losing of money honestly earned, and for which the county received an honest equivalent, at least, so far as appears

from this record. After consideration of the several provisions of the constitution relating to this subject, we are of the opinion that the cash in the treasury on the 1st day of January, 1896, and the balance of the taxes for 1894 and 1895, constituted revenue for 1896, and that section 5 of the act of 1888 continued in force until it was repealed by an act entitled "An act to establish a uniform system of county government," which was approved April 14, 1896, and took effect, in accordance with section 25, art. 6, of the constitution, on the 5th day of June of the same year.

As to the disputed item of revenue, "Redemption of tax sales previous to 1896": While it does not so expressly appear in the pleadings, yet it is evident that the whole amount thereof was not revenue of the county, but that the major portion belonged to the state and other public corporations, and it is now stipulated by the parties that only $3,180.74 of the $11,889.12 actually belonged to the county, which amount, for like reasons as those respecting the other disputed items, must be regarded as revenue for 1896. The interest which accrued on bonds before their sale for the payment of warrants outstanding, amounting to the sum of $4,537.83, we think should also be considered revenue for that year. With these several additions to the amount of undisputed items, the total amount of revenue for 1896 was as follows:

| | |
|---|---:|
| Total amount admitted | $184,407 46 |
| Miscellaneous items, as above | 2,120 66 |
| Cash on hand January 1, 1896 | 40,244 52 |
| Taxes for 1894 and 1895 | 29,280 97 |
| Redemption of tax sales | 3,180 74 |
| Accrued interest on bonds | 4,537 83 |
| Total amount of revenue | $263,772 15 |

It will thus be observed that if the law placing the

counties on a cash basis had been in force on and after the 1st day of January, 1896, the county commissioners would have been limited in their expenditures for that year to the sum of $263,772.15. Since, however, we are of the opinion that section 5 of the act of 1888 was in force until June 5, 1896, it becomes necessary to determine how the powers of the commissioners respecting expenditures were affected by that section, which, among other things, provides: "No county shall incur any indebtedness or liability in any manner or for any purpose, to an amount exceeding in any year the total amount of its income and revenue for the two fiscal years immediately preceding the incurring of such indebtedness." In construing this provision, the supreme court of the territory of Utah, in *Fenton* v. *Blair*, 11 Utah, 78, speaking through Mr. Justice Smith, said: "Taken in connection with the provisions which require the financial condition of the county to be made up at the end of each fiscal year, the statement to be rendered at that time, our conclusion is that the intention of the legislature was to limit the power of the county court to issue warrants at any time, for any purpose, or in any manner, or to contract any debts or liabilities beyond the revenues of the current fiscal year in excess of the revenue and income for the two years immediately preceding." Under the authority of that case, so long as the law remained in force the commissioners were not limited, in their expenditures, to the actual amount of the revenue for the current year, but had the right to take into consideration the amount of the revenue of the two fiscal years immediately preceding; and the fact that the law was repealed during the year 1896 did not change the character of their acts performed prior to the repeal. If the indebtedness created during the period of the year in which the law

was in force did not exceed the limit allowed, then the repeal of the law ought not to be given an effect, by construction, to render unlawful a debt which had been lawfully created. To avoid such a result the court is doubtless justified in adding to the amount of the items of revenue for the year 1896 such a proportion of the revenue of the two preceding years as the period of time of that year, during which the law was in force, bears to the whole year. From the answer it appears that the total revenue for the years 1894 and 1895 was $273,349.65. Said section 5 was in force until June 5, 1896, or five months of that year; hence adding five-twelfths of that amount, or $113,895.68, to $263,772.15, the total revenue, we have the debt limit for 1896, which is $377,767.83. It would probably be more satisfactory to divide the year into two periods, and then compute the amount of the revenue for each period in accordance with the old and the new laws, and limit expenditures and indebtedness accordingly; but as an examination of the public records, of which the court may take judicial notice, will show that such division and computation could not change the result in this case, we do not regard it of sufficient importance to make a more minute computation than as above set forth.

Having thus ascertained the limit of indebtedness for 1896, it now becomes necessary to ascertain whether the expenditures and warrants issued for that year exceeded such limit. The expenditures about which there appears to be no controversy, the same being admitted by the respondent, are as follows:

Amount of various undisputed items............................ $222,616 12
Claims filed with county clerk for services rendered and
    materials furnished in December, 1896................... 1,943 36
Interest on warrants issued during the year 1896......... 2,500 00

    Total amount of undisputed items .................... $227,059 48

The disputed items of expenditures and appropriations are:

| | | |
|---|---:|---:|
| Claims for salaries and for services and materials furnished in 1896, appropriations for which were made January 2, 1897 | $19,786 | 94 |
| Amount due jurors and witnesses for services in 1896, for which no claims were presented or appropriation made during that year | 4,390 | 95 |
| Interest on $439,205.73, county warrants, from January 1, 1896, to August 1, 1896, at 8 per cent per annum | 20,496 | 30 |
| Interest on $92,522.86, county warrants, from August 1, 1896, to January 1, 1897, at 8 per cent per annum | 3,084 | 05 |
| Warrants outstanding previous to January 4, 1896, paid | 58,177 | 41 |
| Interest on same | 8,876 | 80 |
| Warrants paid during the year 1896 for debts incurred previous to that year | 14,331 | 40 |
| Total amount of disputed items | $129,143 | 85 |

Respecting the first disputed item of expenditure, it is alleged in the affidavit, and not denied in the answer, that at least $16,000 thereof was appropriated for salaries of county officers for December, 1896. These salaries were not due until the expiration of the month, and no duty on the part of the county to pay arose until January 1, 1897. Therefore that sum should not be charged as an appropriation of 1896, but the balance of the item, or $3,786.94, is properly so chargeable, and must be added to the total of expenditures for 1896, because that amount was for materials furnished and services performed before the expiration of the year, and liabilities attached immediately upon the delivery of materials or the performance of service. The salaries stand upon a different ground; for, as to them, there was no debt until the services were rendered, and the liability was not complete until the end of the year, and no action could be maintained to compel payment until after the expiration of

the term of service. *State* v. *McCauley*, 15 Cal. 430;
*People* v. *Pacheco*, 27 Cal. 176. As to the fees of jurors
and witnesses embraced in the second disputed item, it
is alleged in the affidavit that certificates were issued
therefor during 1896, which indicates that the services
were performed and a debt created within that year,
and therefore that item of $4,390.95 must be treated as an
indebtedness of 1896. The next disputed item is an inter-
est charge of $20,496.30, and the appellant insists that
this whole sum is an indebtedness of 1896. We cannot
concur in this contention. The interest was computed on
$439,205.73, county warrants, from January 1 to August
1, 1896, at 8 per cent per annum. Of these warrants,
$89,563.32 had been adjudged void by the supreme court
of the late territory of Utah. It is true that they were
afterwards rendered legal, by legislative enactment,
which became effective June 5, 1896, but the fact that
they were so validated would not constitute interest
thereon previous to that date an indebtedness of 1896.
There were also other warrants included in the sum on
which interest was calculated to the amount of $54,973,
which had been repudiated for fraud, and which, it ap-
pears, are now in process of litigation. We are of the
opinion that interest on these warrants should not be held
to constitute an indebtedness of that year. While a lia-
bility for interest is created at the time when warrants
are lawfully issued, still, if they are afterwards repudi-
ated for fraud, and litigated in court, the final judgment
of the court becomes binding, and constitutes the indebt-
edness, both as to the face of the warrants and interest.
Likewise, when illegal warrants are made lawful by leg-
islative enactment, there is no debt until the law takes
effect. Eliminating, then, the amount of the warrants
adjudged illegal, and those repudiated, from the $439,-

205.73, the remaining ones amount to $294,664.41. The interest on this sum from January 1 to June 5, 1896, when the $89,568.32 warrants were made valid, is $10,148.24. To this must be added the interest on $89,568.32 and on the $294,664.41 from June 5, the date when the warrants amounting to the former sum were legalized, to August 1, 1896, the date when $350,000 of the indebtedness represented by warrants was bonded; that is, the interest at 8 per cent per annum for that time on $384,232.73, which is $4,779.66. Then subtracting the $350,000 in bonds, on which no interest became due until February 1, 1897, and was therefore not an indebtedness of 1896, from the $384,-232.73, there remains $34,232.73, the interest on which from August 1, 1896, to January 1, 1897, also constituted an indebtedness of 1896, and is $1,140.98. It will be seen, therefore, that, under the item of interest here being considered, the total amount thereof to be charged as indebtness of 1896 is $16,068.88; and this includes also the next disputed item of interest, above set forth as $3,084.05. This sum, however, is erroneous, because the amount of warrants, as has been shown above, on which interest should be charged from August 1, 1896, to January 1, 1897, is $34,232.73, and not $92,522.86, as stated in the item. The remaining disputed items of expenditures, above set forth, we think are properly charged as appropriations of that year. It is also alleged in the affidavit, and not denied in the answer, that the sum of $37,879.90 was appropriated in 1896 for debts created prior to that year. This sum is therefore an expenditure of that year. As, however, $14,331.40 thereof has already been allowed under the disputed item, "Warrants paid during the year 1896," etc., above set forth, the remainder only, or $23,-548.50, must be here added as an expenditure for 1896.

With these several additions to the amount of undisputed items, the expenditures for 1896 appear as follows:

| | |
|---|---:|
| Total amount of undisputed items | $227,059 48 |
| Claims for services and materials furnished in 1896, appropriated January 2, 1897 | 3,786 94 |
| Amount due jurors and witnesses for services in 1896, etc. | 4,390 95 |
| Interest on warrants | 16,068 88 |
| Warrants outstanding previous to January 4, 1896, paid | 58,177 41 |
| Interest on same | 8,876 80 |
| Warrants paid during the year 1896 for debts incurred previous to that year | 14,331 40 |
| Balance of the sum of $37,879.90, appropriated in 1896 for debts created prior to that year | 23,548 50 |
| Total appropriations and expenditures | $356,240 30 |

Deducting the amount of the appropriations and expenditures from the amount constituting the debt limit, there remains an excess in favor of the former of $21,527.47. Such being the result, we conclude that the appropriations and expenditures of 1896 did not exceed the limit of indebtedness authorized by law, and that the refusal of the county commissioners to act on the respondent's claim was wrongful. After careful examination of the constitutional provisions referred to in this case, and upon considerations of justice and fair dealing, as well as upon the principle that, in determining the constitutionality of a statute, every doubt should be resolved in favor of its validity, we reached the conclusion that the county commissioners of 1896 had the right to conduct the county affairs in pursuance of the act of 1888 until June 5th of that year, and that section 5 of that act was not annulled until the repealing statute took effect. There can be no doubt that the disposition of this case is in harmony with justice and equity. There is no pretense that the respondent's claim was tainted with

fraud, or that the county did not receive a full and fair equivalent, or that the numerous warrants, aggregating many thousands of dollars, which are affected by this case, were not issued, delivered, and accepted as the result of honest transactions. Under the circumstances, the court is not inclined to reject an honest claim. To refuse to acknowledge and pay a just debt is a thing to be discouraged, and should not be aided by judicial construction. Such a thing dispels confidence, ruins credit, and casts a reproach upon government. In determining a case like this, it must not be forgotten that, in the transition from a territorial to a state government, it is not always easy, even for those learned in the law, to determine just what the law is. How much more difficult for laymen! The changes made by the adoption of a constitution are frequently attended with much uncertainty, and tax the greatest skill to ascertain the true intent. Hence the rules of construction in a case like the one at bar should not be applied too rigidly, nor the power of the court exerted without due considerations of justice and fair dealing. That a debt honestly contracted should be honestly paid is a truism founded on the highest principles of justice, and the law itself is, or ought to be, but the exponent of that principle. We feel, therefore, no hesitancy in declaring that the respondent in this case must prevail, and that the warrants whose validity was in question are valid. We do not wish, however, to be understood as encouraging extravagant expenditures. This case is surrounded by peculiar circumstances, owing to the changes which necessarily occurred in the adoption of the state government, and therefore most of the questions here determined are not likely to arise again in the future, because the law of 1888 has been superseded, and the new law is now the rule to be ob-

served by the commissioners. Nor does the disposition of this case militate against the placing of the several counties on a cash basis. Under the present provisions of the law, the commissioners have power, either to bond the outstanding indebtedness of the county, or to make provisions for its payment through the ordinary sources.

Counsel for the appellant insist that some of the questions raised in this record were decided in the case of *Fritsch* v. *Board*, 15 Utah 83, and, it appears, adversely to the views herein expressed. While there is some merit in this contention, it will be remembered that in that case none of the questions relating to the payment of indebtedness created prior to 1896 out of the revenue of that year were presented. That case, while it affected the same warrants, was imperfectly before the court, and therefore cannot be regarded as conclusive in this, and, in so far as it conflicts herewith, it is hereby overruled. We find no reversible error in the record. The judgment is affirmed.

HILES, District Judge, concurs. ZANE, C. J., dissents.