RACHEL McMASTER, Plaintiff and Appellant *v.* EMMA MORSE and CHARLES W. MORSE, Defendants and Respondents.

Action for Possession of Real Property—Evidence—Judicial Notice—Prima Facie Case.

> Where in an action to recover possession of real property plaintiff's evidence showed that plaintiff and her grantors had been in the continuous and undisturbed possession of the land in question for nearly twenty years; that a certain fence inclosing the land in plaintiff's lot was the boundary line between the property of plaintiff and defendants under a survey made by the city surveyor in 1878; that such fence had been treated and recognized as the boundary line for twenty years; and that defendants tore down said fence and erected a new one inclosing the land in dispute within their lot; coupled with the fact that courts will take judicial notice of geographical divisions of incorporated cities, a prima facie case was established for the plaintiff, and a motion for a non suit should have been denied.

( Decided November 14, 1898.)

Appeal from the District Court, Salt Lake County, Hon. A. N. Cherry, *Judge.*

Action in ejectment for a strip of land. From a judgment of non-suit, plaintiff appeals. *Reversed.*

*Clesson S. Kinney, Esq., Alexander McMaster, Esq.,* and *Messrs. Shepard* and *Sanford* for Appellant.

Under the law upon the question of non-suit, as laid down in *Lowe* v. *Salt Lake City*, 13 Utah 91, "When motion for non-suit is interposed it becomes the duty of the court to assume as true all facts which could be pro-

perly found by a jury from the evidence, and then, after giving the plaintiff the benefit of every fair and legitimate influence and intendment which can arise from the evidence, in order that the court may grant the motion, it must appear that the plaintiff has still failed to prove his case. Before the question * * * becomes a law for the court, the facts shown by the evidence must be such that all reasonable men must draw the same conclusions from them." *Dedericks* v. *Ry. Co.*, 13 Utah 34; *Railway Co.* v. *Ives*, 114 U. S. 408; *Railroad Co.* v. *Converse*, 139 U. S. 469; *Wines* v. *Railroad Co.*, 9 Utah 228; *Wallace* v. *Railroad Co.*, (Ar.) 37 Pac. 477; *Smith* v. *Railroad Co.*, 9 Utah 141.

Upon question of non-suit in case of ejectment, see also *Leonard* v. *Flinn*, 89 Cal. 543; *Zilmer* v. *Gerichten*, 111 Cal. 73.

Proof of possession alone, of the strip of land in controversy, was sufficient to establish a prima facie case in an action in ejectment as against an intruder. Ballard's Annual on Law of Real Property Vol. 1, Sec. 127; Tyler on Boundaries p. 315; Tyler on Ejectment, p. 852; *Davis* v. *Easley*, 13 Ill., 193; *Clute* v. *Varis*, 31 Barb. 511; *Jones* v. *Easley*, 53 Ga. 454; *Burt* v. *Panjaud*, 99 U. S. 180; *Thompson* v. *Burhans*, 79 N. Y. 93; *Kinney* v. *Harriet*, 46 Mich. 87.

The presumption arising from proof of prior possession of a party, in an action of ejectment against a mere intruder, is that the party having such prior possession was seized in fee and is prima facie evidence of such fact. Ballard's Annual on Law of Real Property, Vol. 1, Sec. 127; Cole Ej. 212, 213; Malone Real Property, Or. 98; 2 Greenlief Ev. Sec. 311.

As against an intruder a party in possession of land, claiming title, has a valid, subsisting interest amounting

to a prima facie title in fee.    *Boyley* v. *Kennedy*, 85 Ga.
703; *Ketchum* v. *Barber*, (Cal.) 12 Pac., 251; *Bates* v.
*Campbell*, 26 Wis. 613; *Simpson* v. *Baring*, 16 Kan.
248.

Of course this presumption could have been rebutted,
but the burden of proof was upon the defendants.    *Davis*
v. *Eastley*, 13 Ill. 193; *Shaw* v. *Hill*, 79 Mich., 86; *Mc-*
*Worther* v. *Heltboll*, 124 Ind. 129.

The supreme court of Utah has held that possession
was *prima facie* evidence of title in fee simple.    *John-*
*ston* v. *Meagher*, 14 Utah, 440.

In granting a non-suit the Court trespassed upon the
authority of the jury in boundary line cases.    1 Thompson
on Trials, Sec. 1461; *Reed* v. *Proprietors*, 8 How. 274;
*Bell* v. *Woodward*, 46 N. H., 332; *Naglee* v. *Ingersoll*,
7 Pa. St. 185, 189.

Where the boundaries are is a question of fact for the
jury.    1 Thompson on Trials, Sec. 1461; *St. Louis* v.
*Meyer*, 13 Mo. App. 367.    Affirmed in 87 Mo. 276; *Tasker*
v. *Cillery*, 59 N. H. 575; *Tebbetts* v. *Estes*, 52 Me. 566;
*Brown* v. *Willey*, 42 Pa. St. 205, 209; *Hupel* v. *Malone*,
56 Mich. 199; *Barry* v. *Otto*, 56 Mo. 177.

The parole testimony of the surveyor who originally
surveyed and located the land, is competent to prove the
location.    Tyler on Boundaries 285; *Tenant* v. *Hampton*,
3 Har. & Johns (Md.) 233.

From the date of the survey in 1878, to the date of the
forcible entry of defendants, in 1892, a period of fourteen
years, greater than the stututory period of limitation, that
old fence was acquiesced in as the boundary line between
the two lots.    This alone was sufficient to have permitted
the case to go to the jury.    4 Am. and Eng. Ency. of
Law 2d. Ed. 863; *Kramer* v. *Goodlander*, 98 Pa. St. 353.

*Messrs. Krebs & Hoppaugh,* for respondents.

The evidence offered must correspond with all the allegations and be confined to the point in issue. *Peay* v. *Salt Lake City,* 11 Utah, 338; *Hartog* v. *Tibbetts,* 1 Utah, 328.

Matter of description must be literally proved. 4 Ency. of P. and P. and cases cited; *Dickensheets* v. *Kaufman,* 38 Ind. 253; *Railroad Co.* v. *Beam,* 11 Ill. App. 215; *Gridley* v. *Bloomington,* 68 Ill. 47; *Robinson Mining Co.* v. *Johnson,* 22 Pac. 450.

"A dispute as to the true location of a line separating two town lots must be determined by an interpretation of the descriptive words in the deed." *Davidson* v. *Anledge,* 88 N. C. 326; *Chapman* v. *Pollock,* 70 Cal. 487.

"All the objects represented upon a plan are to have the same effect as they would if brought into deed by verbal description." *Thomas* v. *Patten,* 13 Me. 333; *ElMayo* v. *Maveaux,* 38 Cal. 442; *Hudson* v. *Irvine,* 50 Cal. 450; Devlin on Deeds sec. 1020, 1021, 1022 and citations.

Miner, J.:

The plaintiff brought this action to recover from the defendants possession of a piece of land described as commencing at the N. W. corner of lot 6, block 57, plat "B" Salt Lake City Survey, in Salt Lake City, running thence south 102 feet, east 3 feet, north 102 feet, west 3 feet to the place of beginning, and claims ownership in fee therein. The answer denies the allegations of the complainant and sets up a special defense to the effect that the defendants own the east part of lot 5, the plaintiff owns the west part of lot 6, Salt Lake City Survey, which immediately adjoins the property belonging to the defendants on

the east, that there was a dispute between the parties as to the location of the boundary line between the lots, and that by agreement of the parties defendants erected a new fence thereon and have held possession of the property ever since to the time of filing the answer, claiming the disputed land as their own.

The dispute seems to arise over the location of the boundary line between lots 5 and 6. The plaintiff is owner of the west part of lot 6, and the defendants are the owners of the east part of lot 5. These lots adjoin each other. It appears that a substantial fence had been erected on the supposed line between lots 5 and 6, which remained and had been treated as the line by the owners of the lots for about 20 years prior to 1892. The plaintiff and her grantors and predecessors in interest, had for about 25 years prior to 1892 had possession of the land on the east side of the fence embracing the land for which this action was brought; that in 1892, the defendants forcibly tore down the old line fence and built another fence 3 feet to the east of where it had stood, thereby inclosing the land in dispute with the land owned by them on lot 5, and on the west side of the fence as recently erected by the defendants.

Mr. Hardie testified that while he was deputy city surveyor in 1878, he was called upon by the owners of the adjacent property to determine the line between lots 5 and 6, and that the old fence as it formerly stood agreed with his survey of the land made in 1878 that he made the survey of the block from two monuments, one a cedar post standing in the center of the block, and the other on the N. W. corner of the block. The post in the center of the block was pointed out to him by the city surveyor as the center of the block, and is still standing there. The other corner post of the block was checked up and was estab-

lished by witness officially. That he correctly made the survey of lot 6 from these two monuments, and that the land in dispute, under the survey of 1878, was in lot 6, and marked by the old boundary fence.

Mr. Smith, a surveyor, testified as to the location of the new corner of lot 6, and the location of the land in question on the east side of the fence; that he knew the cedar post in the center of the block; that it had been there for 15 years, and that it checked with a stake set on the west side of the block, set by Mr. Hardie, the surveyor, and himself many years before, at a time when the survey of the land was made; that he determined the position of the n. w. corner of lot 6 from a tie given in the office of the city engineer, which he checked from the position of the old fence; that the plat was taken from the actual survey upon the ground from established monuments of that block, and the piece in controversy belongs to lot 6.

The plat offered was allowed to be used as a drawing to illustrate the testimony, but not as a correct plat of the block.

The plaintiff also offered in evidence an abstract of lot 6, showing a line of conveyance of the title of the land described in the complaint, and annexed to the abstract was a plat of lot 6, block 57. The abstract was admitted by consent for all purposes shown on its face. The abstract shows a deed to the land to plaintiff, as described in the complaint, dated September 21, 1891. The plat was recorded and certified February 21, 1889.

The court, on motion, entered a judgment of non-suit, holding, so far as appears, that the plaintiff had failed to establish her right to the land by failing to show the boundaries of lot 6, according to the Salt Lake City Survey, or that the land taken was the land described in her complaint. From this judgment the plaintiff appeals.

The able counsel for the respective parties have favored the court with elaborate briefs, discussing therein many features of the law with reference to the questions that are seemingly involved in this case, but we do not deem it necessary to review all of the several questions so ably discussed. The plat and official survey of 1878, were not formerly shown except from oral testimony and surveys made from official corners and posts established on lot 6, block 57, in 1878. It is established that courts will take judicial notice of geographical divisions of counties and incorporated cities, and the court cannot be ignorant of the fact that Salt Lake City is divided into lots, blocks and streets, which is a fact of such universal notoriety as to render proof of it unnecessary. *Brumagim* v. *Bradshaw*, 39 Cal. 24; *P. V. Coal Co.* v. *County Comm'rs*, 15 Utah, 97.

The fact that the deed had reference to Salt Lake City Survey would not prevent parol evidence being offered to show that the boundary line of a lot was located and officially established by stakes and monuments erected thereon 15 years prior, and that such boundary had been acquiesced in by adjoining proprietors ever since, and that the physical boundary line of the lot conformed to a survey marked by such monuments. *O'Farrell* v. *Harvey*, 51 Cal. 125; *Cleveland* v. *Daniel*, 77 Cal. 73; *Leonard* v. *Flynn*, 89 Cal. 543; *Whiting* v. *Gardner*, 80 Cal. 78.

The testimony when taken together with the answer, the presumption as to judicial notice and surrounding circumstances of the case, while not free from criticism and while not absolutely conclusive, yet they tend to show a *prima facie* case for the appellant, and show that she was entitled to the possession of the land in question; that she and her grantors had been in the continuous, undisturbed possession of the same up to the old

line fence which was the west line of lot 6, for nearly 20 years; that such fence was the boundary line of lot 6, under the survey made by the city surveyor in 1878, and that such fence had been treated and recognized as the boundary line between lots 5 and 6 by the owners and occupants of said lots for 20 years; that the land for which the action was brought was shown to adjoin the old line fence, on the west side of lot 6, and that the defendants tore down this old line fence, which was considered the boundary line of lots 5 and 6, and erected a new one 3 feet to the east of it, thus inclosing the land in question with their own.

These facts sufficiently appear from the testimony of the surveyor who had surveyed the lot with reference to the old corner stakes and monuments, set by the official surveyor and witness under a survey made in 1878.

While the facts stated are not absolutely conclusive of the right, and the presumption therefrom may be rebutted, yet they establish a *prima facie case*, with reference to the boundary line of lot 6, which would not justify the court in rendering a judgment of non-suit.

With such facts before us, it is believed that a more correct determination of the case can be obtained from a re-trial, where all the facts concerning the property can be brought to the surface.

The judgment of the district court is reversed, with costs, and a new trial granted.

ZANE, C. J., and BARTCH, J., concur.